CATHERINE ALEXANDER, ADMINISTRATRIX OF THE ESTATE OF CHARLES F. ALEXANDER, DECEASED, Respondent, v. STAR-CHRONICLE PUBLISHING COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted October 4, 1917. Opinion Filed November 6, 1917.

1. **MASTER AND SERVANT: Injury to Third Person: The Relation: Question for Jury.** Where the evidence is conflicting, the question whether a boy who threw a bundle of newspapers from a truck do-

livering to dealers, hitting plaintiff's intestate, stood in the relation of employee to defendant newspaper publisher, or to the truck owner, *held* a question of fact for the jury.

2. NEGLIGENCE: Public Ways: Use of Streets: Throwing Bundles. Throwing a bundle of papers or any solid substance out of a vehicle moving along the public ways, so carelessly as to a hit a person thereon, is actionable negligence.

3. TRIAL PRACTICE: Instructions: Optional to Request: Duty of Court. In a civil case a party has the option to ask or not to ask instructions and the court owes no duty to either party to give instructions either on its own initiative or in lieu of those refused.

4. INSTRUCTIONS: Measure of Damages: Necessity of Request. In the absence of a requested instruction by defendant on the measure of damages, or restricting the matters which may be considered, an instruction, in general terms, that the jury, if it finds for plaintiff, shall assess his damages, if any, at such sum, not exceeding that named in the petition, as they may believe and find from the evidence to be a fair and just pecuniary compensation for damages, if any, occasioned to plaintiff by reason of the accident, is not vulnerable to attack on appeal.

Appeal from the Circuit Court of the City of St. Louis— *Hon. Kent. K. Koerner*, Judge.

AFFIRMED.

*Fred L. English* and *W. Christy Bryan* for appellant.

(1)   To recover against a corporation for personal injuries the plaintiff must allege and prove that the act causing the injury was committed by an agent or servant of the defendant in the scope of his employment and in the course of business. Snyder v. Railroad, 60 Mo. 143; Glassman v. Harry, 182 Mo. App. 304. (2) A master is not liable for injuries resulting from acts of a servant while under the control of a third person or independent contractor. It is not the actual exercise of control which is regarded, but the right to exercise such control, and the contract with an independent contractor who employs such servants governs. 26 Cyc., 1522; Healy v. Range Co., 161 Mo. App. 483; Garven v. Railway Co., 100 Mo. App. 617; O'Hara v. Gas Light Co.,

244 Mo. 395, 408 and 409; Fink v Furnace Co., 82 Mo. 276, 284; Kipp v. Oyster, 133 Mo. App. 711, 716; Wills v. Railroad, 133 Mo. App. 625, 634; Long v. Moon, 107 Mo. 334; Foster v. Wadsworth, 168 Ill. 514; Wood v. Cobb, 13 Allen (Mass.) 258; Gale v. Deroit Journal Co., 158 N. W. (Mich.) 36; Press Brick Co. p. Campbell, 116 Ill. App. 322; Cole v. Gas Co., 121 La. 771; Hillsdorf v. St. Louis, 45 Mo. 98; Smith v. R. R., 85 Mo. 418, 432; Delory v. Blodgett, 185 Mass. 126, 64 L. R. A. 114. (3) An in-struction which tells the jury to assess damages at such sum as the jury may believe and from the evidence to be a reasonable compensation for pain, loss of wages, expenses, etc., suffered and to be suffered from plaintiff's injuries is error unless the instruction is modified by other instructions stating that the jury must find that such injuries are due to the negligence or fault of the defendant. Powell v. Railroad, 255 Mo. 420; Eversole v. Railroad, 249 Mo. 523; McDonald v. Construction Co., 183 Mo. App. 415; Davis v. Street Ry. Co., 188 Mo. App. 128; Menhardt v. Midland Ice & C. Co., 163 Mo. App. 278. (4) An instruction which tells the jury to assess dam-ages at such sum as the jury may believe and find from the evidence to be a reasonable compensation for pain, loss of wages, expenses, etc., suffered and to be suffered from plaintiff's injuries, unless modified by other in-structions, irrespective of whether such injuries are due to the negligence or fault of the defendant, is tantamount to directing the jury to find in favor of the plaintiff simp-ly because he was injured. Powell v. Railroad, 255 Mo. 420; Eversole v. Railroad, 249 Mo. 523; McDonald v. Construction Co., 183 Mo. App. 415; Davis v. Street Ry. Co., 188 Mo. App. 128; Menhardt v. Midland Ice & C. Co., 163 Mo. App. 278. (5) An instruction which tells the jury that the burden of proof is on the plaintiff to estab-lish the facts necessary to a verdict in his favor under these instructions impliedly tells the jury that the bur-den of proof is not upon the plaintiff as to facts not covered by such instructions, and if the other instructions

omit to charge upon the main issues involved in the case the instructions as a whole are erroneous. Powell v. Railroad, 255 Mo. 420; Eversole v. Railroad, 249 Mo. 523; McDonald v. Construction Co., 183 Mo. App. 415; Davis v. Street Ry. Co., 188 Mo. App. 128; Menhardt v. Midland Ice & C. Co., 163 Mo. App. 278. (6) It is error to give an instruction allowing the jury to include in its verdict damages for inability to earn wages in the future unless the petition has alleged that plaintiff will be unable to earn such wages in the future and unless proof is submitted as to what plaintiff is earning at the time of the injury. In the absence of such proof loss of future earnings is mere speculation. Wallack v. St. Louis Transfer Co., 123 Mo. App. 160, 167; Paquin v. St. Louis & Suburban Ry. Co., 90 Mo. App. 118; Leach v. Railroad, 137 Mo. App. 300. (7) The court should have given defendant's peremptory instruction asked at the close of plaintiff's case. Kipp v. Oyster, 133 Mo. App. 711; Wood v. Cobb, 13 Allen (Mass.) 58; Gall v. Detroit Journal Co., 158 N. W. (Michigan Sup. Ct.) 36.

*John C. Robertson* and *Phil H. Sheridan* for respondent.

(1) It was a question for the jury under the evidence to say whose servant Albert Sattele was. Gayle v. Mo. Car & Fdy. Co., 177 Mo. 427; Kipp v. Oyster, 133 Mo. App. 711; O'Neil v. Blase, 94 Mo. App. 648; Waters v. Fuel Co., 52 Minn. 474; Muelich v. Braker, 119 Mo. App. 332; Coal & Iron Co. v. Barrie, 179 Fed. 50, 54; The Estrathallan, 184 Fed. 474; Standard Oil Co. v. Anderson, 212 U. S. 215; Flori v. Dolph, 192 S. W. 949 (Mo. Sup. Ct., Feb. 20, 1917; Sempier v. Goemann, 161 N. W. 354; Heywood v. Ogasapian, 224 Mass. 203; Stagg v. Taylor's Adm., 89 S. E. (Va.) 237; Katz v. Lutz, 163 N. Y. Sup. 562; Konelitsky v. Mathews, 118 N. Y. Sup. 366; Cain v. Hugh Bawn, 202 Mass. 237; Baldwin v. Abrahams, 57 Appellate Div. 67 (affd.), 171 N. Y. 677; Peele v. Bright, 89 S. E. 238. (2) It is not error to under-instruct the jury. Section 1987 of the Revised Statutes of 1909; Browning v. Railroad Co., 124 Mo. 55; Dukan v.

Merc. Co., 197 Mo. 238; Powell v. Railroad Co., 255 Mo. 420; Davis v. Street R. R. Co., 188 Mo. App. 130; Hufford v. Insurance Co., 130 Mo. App. 638; Parman v. Kansas City, 105 Mo. App. 691; Wilson v. Railroad Co., 122 Mo. App. 667. (3) If defendant desired a more specfiic charge on the measure of damages it must ask it. Hufford v. Insurance Co., 130 Mo. App. 638; Rattan v. Railroad Co., 120 Mo. App. 270; Powell v. Railroad Co., 255 Mo. 420. (4) Defendant submitted the question of independent contractor to the jury and cannot now complain because it found against it. Barston v. Cable Co., 144 Mo. 220; Scarf v. Fries, 77 Mo. App. .360; Water Co. v. City of Neosho, 136 Mo. 508; Hartman v. Railway, 48 Mo. App. 624; Seiter v. Bischoff, 63 Mo. App. 157.

REYNOLDS, P. J.—Charles F. Alexander, as plaintiff, by his amended petition in the case, charges that in the conduct of its business, the defendant, Star-Chronicle Publishing Company, a corporation, engaged in the publication and circulation of a newspaper in the .city of St. Louis, known as the St. Louis Star, employs automobile trucks to deliver large bundles of newspapers to the various dealers in the city of St. Louis; that these trucks are operated and managed by the agents and servants of the defendant and are operated over the streets of the city at a fast and highly dangerous speed; that on October 12, 1914, one of these automobile trucks, while in charge of the agents and servants of the defendant, and while being operated at a speed in excess of twenty-five miles an hour, in violation of the statute, and when at or about the intersection of two streets, the agent and servant of the defendant in the automobile threw a heavy bundle of papers from a fast moving automobile to the sidewalk and hit plaintiff; that the agent and servant of the defendant threw this bundle of papers from a fast moving automobile in utter disregard of the presence of pedestrians lawfully upon the street and without warning; that the throwing of the bundle and the fast and dangerous rate of speed at which the automobile was

operated was negligence and directly caused plaintiff's injuries; that he was thrown to the ground by the force of the blow from the bundle of papers, hurt about his head, arms and legs, and body, and has sustained internal injuries, from all of which he was unable to follow his usual occupation; that he suffered great pain of body and distress of mind, and will so suffer for a long time; that his injuries are permanent; that he employed a physician to attend to his injuries, for whose services he must pay not to exceed $200. Judgment is demanded for $5000.

The answer was a general denial.

The cause was tried before the court and a jury and resulted in a verdict in favor of plaintiff in the sum of $2300, judgment following. Interposing a motion for new trial and in arrest and these being overruled, defendant has duly appealed. Pending the appeal Charles F. Alexander died and his widow Catherine Alexander was duly substituted as administratrix of his estate, entering her appearance as such.

At the close of the testimony in chief for plaintiff, and again at the close of all the testimony in the case, the defendant asked an instruction for a verdict which the court refused, defendant excepting.

At the instance of the plaintiff the court gave an instruction on the measure of damages, which was the only instruction asked by plaintiff.

At the instance of the defendant the court gave this instruction:

"If you find and believe from the evidence that the injury to plaintiff, if any, was caused by a bundle of newspapers being thrown from a fast-moving automobile truck; that said automobile was run by Arthur H. Bode, *and said newspapers were thrown by some one in his employ and under his control;* and if you further believe that the said Arthur H. Bode had entered into and was at said time delivering newspapers for the defendant under the written contract introduced as evidence by the defendant, then your verdict should be for the defendant." (Italics ours.)

Of its own moton the court instructed the jury that the burden of proof was on plaintiff to establish by the preponderance or greater weight of evidence the facts necessary to a verdict in his favor "under these instructions," and defined the burden of proof and the number of jurors necessary to find a verdict. Defendant also requested an instruction to the effect that because defendant was a corporation creates no presumption of its liability, and the jury were not to consider that fact in reaching a verdict. This was refused. As no point is made before us on this refusal, we pass it.

It appears from the evidence in the case that by a contract of date October 21, 1913, and introduced by defendant, that one Arthur Bode agreed to furnish the Star-Chronicle Company with three (3) automobile trucks in good condition and to deliver packages of the St. Louis Star to various designated points within the city of St. Louis "as quickly as possible." The written agreement proceeds:

"In accepting such delivery contract the said Arthur Bode agrees to exercise due precaution and to assume full liability for the safe delivery of packages and for any accident that may occur in connection with such delivery after such packages have left the mailing room of the New St. Louis Star office.

"Compensation is to be paid the said Arthur Bode to the amount of one hundred and thirty-five dollars per week, which includes payment for the bundle boys on machines as well as full compensation for the said Arthur Bode's services per week.

"In the event of machines being disabled the said Arthur Bode is to supply other machines capable of properly making deliveries."

On the day of the accident, that is, October 12, 1914, Bode, called as a witness by plaintiff, testified that his business was that of an automobile contractor, and that he was then working under the before-mentioned contract, and was engaged in delivering newspapers for defendant to branches and paper carriers; that the bundles of papers were put in the machine, taken to the corner

at which they were to be delivered and dropped off from the automobiles. On that day, that is, October 12th, there was a boy, called a "bundle boy," by the name of Sattele on the machine which Bode was then driving. Bode started from the corner of Twelfth and Olive Streets, where the office and publishing house of the defendant is located, went south over Twelfth Street to Chouteau, east on Chouteau to Twelfth, then turned west on Chouteau to Eighteenth, south on Eighteenth to Park. The boy was on the end of the machine. According to Bode's testimony the duty of this bundle boy while on the machine was to throw off the bundles of papers at the different corners according to the labels or marks on the bundles. As they reached the different corners the boy would pick up the bundle labeled for that place and throw it off, the boy picking out the bundles himself. Asked by whom this boy Sattele was employed, Bode answered: "I had three boys and there was an extra machine went on that day and he (Sattele) came up from out of the mailing room; was an extra boy." Asked if Sattele worked for him (Bode), he answered that Sattele was sent up out of the (Star) mailing room; that he was not working for him in the early part of that day. Asked if Sattele was working for him when he was delivering these papers, Bode answered, "Not as I know." Asked if he (Bode) had paid Sattele, he said, "No." Asked by the court who had employed Sattele, Bode answered, "He was employed down in the mailing room and when the extra machine went on they sent him up, out of the mailing room and told him to go on the automobile and he took the machine." By the court: "He was sent to you by them? A. Sent out of the mailing room; I don't know who sent him up." Asked if he remembered hitting a man with a bundle of papers on that day, Bode answered that he did not remember it; the only thing that he remembered was that when they got back to the Star office Sattele said, " 'We hit a man,' and started laughing; he said, 'We hit him on the knee and he fell down; bundle of ten papers.' " Asked how large the bundle was, Bode said, "Ten papers," and illustrated the size by his hands, apparently. At that time

the machine was going between 15 and 20 miles an hour; did not know how hard they had hit the man. Asked why he did not know they had hit the man he said, ''The boy never said anything and I always look in front of me.'' After making deliveries on his route he went back to the office of the Star and when another edition of the paper was ready, went out again. The machine belonged to him (Bode.).

On cross-examination Bode admitted that the agreement which we have before set out had been signed by him and was in force on the day of the accident; that he (Bode) owned three machines, but on the day of the accident he had an extra machine because the circulating manager of the Star, about a day or two before the baseball series started, had told him he wanted an extra machine and wanted to know what it would cost, and Bode told him. The machine on which Sattele was stationed that day was one of the regular machines; he (Bode) was driving it himself; Sattele got on it. Asked who paid the bundle boys he had on the back of the machines, he said he paid three of them. They did not work all day for him, but received $2.50 a week from the Star and $2 a week from him. The boys worked for the Star in the morning, getting down to the office at .10 o'clock in the morning and staying until the work is out, then they worked on the machines for him and he paid them.

In redirect examination Bode testified that when he first entered into the contract with the Star there was nothing in it about bundle boys; that was put in afterwards; that the manager for the Star, on the 12th of October, was down on the sidewalk and Bode told him he had no boy, and the manager said, ''I will see that you get one,'' and the first thing he (Bode) knew Sattele came up and the machines were there and he hopped on the machine Bode was driving and did the throwing. Asked if he had anything to do with directing the boy where to throw, he answered, ''I just went on.'' He was asked, ''You didn't tell him where to throw, how to work, or anything of that kind; you had nothing to do with that;

197 M. A.—39

is that right?'' To which he answered, ''Yes, sir.'' The Star paid him (Bode) on Monday of each week.

On part of the defendant, its president identified the contract we have set out, which was in evidence, and said it had been signed under his direction by the circulation manager.

A witness for the defendant, who had charge of the delivery, testified that the bundle boys who worked on these machines were hired by Bode; that he had control of them; that Bode had full charge of the bundle boys in the back of the machines; that these bundle boys were supposed to throw bundles; that Bode hired the drivers for the automobiles. These bundle boys also worked for the Star. He knew Sattele, and in October, 1904, Sattele had worked partly for the Star and partly for Bode. The Star paid him $2.50 a week and Bode paid him $2.00.

On cross-examination this witness said that the week in which the accident happened there was an extra machine on account of getting out the papers for the World Series of baseball. The contract calls for three, but on this occasion there were four. The bundle boys on the rear of the machines worked partly for the Star and partly for Bode; those working for Bode were not hired by the Star for that; Bode could hire whoever he wanted. This witness testified that he was the one who had sent Sattele up to Bode. Asked, ''Bode didn't hire him, did he?'' he answered, ''Bode, no more than he was on the machine, but if he didn't want to hire him he didn't have to.'' That he (witness) sent the boy on that machine and when he got on the machine the boy threw the papers, which were marked where they were to be thrown out. Asked if Bode told the boy where to throw them he answered that the bundle boy did that and threw them from place to place as he went along, and Bode drove the machine. Witness gave Bode the route to go but did not direct him how to take it. Bode had charge of the delivery by machines; he could switch and do as he pleased. Witness, as representing the Star, did not have anything to do with the way Bode ran his machines. The machines were there and it was Bode's place to deliver the papers,

he being at the call of the Star all the time. Asked how he happened to send Sattele up on that occasion, he said Bode needed a boy—wanted a boy, and witness sent Sattele up because Sattele was rather acquainted in throwing off bundles and had worked for Bode once before. Asked if Bode paid him for that work that week, witness answered that Bode "certainly did." Asked how he knew that, he said it so appeared on the payroll.

A witness, a lady who had been in the employ of defendant and in charge of the payrolls, testified by deposition that she had kept them and had paid out the money they called for and checked back. Reading from the payrolls, she testified that they showed this: "Weekly payroll New St. Louis Star, department circulation, week ending October 10, 1914. Albert Sattele, $4.00. Weekly payroll New St. Louis Star, department circulation, week ending October 17, 1914, pay of Albert Sattele, $2.50." That is for the week between October 10th, and October 17th and ending October 17. The payroll for the week ending October 24th, shows Albert Sattele was paid $2.50. There is no testimony showing who, besides the Star, Sattele worked for that week or whether anyone paid him more than the $2.50 paid by the Star.

In rebuttal, Bode, recalled by plaintiff, was asked if Sattele had done any work at any time for him, and he answered that he had not done any before this time, that is, before October 14, 1914, and that he had never paid him for services on that machine before October 12th; had never paid him anything for any work he did before that time and had not paid him for that week. On cross-examination Bode testified that Sattele was working on October 12, when this accident occurred, on the machine which he was driving himself; that was one of the regular machines. Four machines worked that week, an extra machine going out on that day. Nobody had ever made any demand on him to pay Sattele for that week's work.

This was all the testimony in the case as to the employment and work of this boy Sattele.

There was testimony as to the accident. It appeared that plaintiff had been down on South Broadway, walked

back to Twelfth Street and mailed some parcel post packages; then walked up to Chouteau Avenue to the corner of Fourteenth, on north side of Chouteau; walked ahead of a car that was coming along when, as he supposed, the automobile hit him; did not see who or what hit him; was hit in the back of the head and knocked unconscious. It afterwards appeared that he had been hit by a bundle of papers thrown from the automobile which was driven at from 15 to 20 miles an hour; was struck on the right side of the back of his head by the papers and. knocked down and his head struck the cobble stones. His leg and left arm were hurt and the little finger of his left hand "made crooked." He also testified to being bruised. When he recovered consciousness he was in his own rooms, which were upstairs in the building near which he was hurt; he found he was bleeding from his eye. Plaintiff was confined to his bed and house for a number of weeks. Before the accident he had been a hearty man in good health, as he said, and apparently so, as those who saw him testified; after the accident he had been an invalid; was still suffering from the effects of the accident. He had contracted to pay out something like $100 for medical attendance.

Bystanders who saw the accident testified that plaintiff, on the occasion referred to, was hit on the back of his head by a bundle of papers thrown from a passing machine by a boy in the rear of it and knocked down. One of them picked him up and took him home. The machine was going pretty fast, probably 15 or 20 miles an hour. Plaintiff was just ready to step on the sidewalk when the bundle of papers was thrown off of the machine and hit him, knocking him down; his eye on his left side was bleeding. Plaintiff, after being knocked down, said a witness, did not know what he was doing; walked along staggering, the witness saying he had to nearly carry him; had known plaintiff before the accident and he always had worked steadily; did not seem to be sick; "was a good healthy looking man."

Plaintiff testified he had been a steady worker before the accident but had not been able to do the same

kind or amount of work since; cannot now see well out of his left eye; before being hurt was in good health—in bad health now; lost weight and could not earn what he did before the accident.

A physician was called, who testified that plaintiff was under his treatment for sometime; it was two or three weeks before he got over the soreness and over a month before the wound in his head or eye healed; that he had lost about 40 pounds in weight since the accident; that he had treated him and charged him $100 for medicine and attendance; had treated plaintiff for probably a year and a half since the accident. Plaintiff had complained about being dizzy ever since the accident and still suffers from that.

There was other testimony by physicians called by plaintiff and defendant as to the physical condition of plaintiff, but we do not deem it necessary to set it out.

There are fourteen assignments of error. Learned counsel for respondent have covered such as they now rely upon by eight specific points under which they have cited authority and to which their argument is directed.

It is first insisted that to recover against a corporation for personal injuries, plaintiff must allege and prove that the act causing the injury was committed by an agent or servant of defendant in the scope of his employment and in the scope of his business; second, that a master is not liable for injuries resulting from the acts of a servant while under the control of a third person or independent contractor. "It is not the actual exercise of control which is regarded," argue counsel for appellant, "but the right to exercise such control, and the contract with an independent contractor who employes such servants governs."

In Flori v. Dolph, not yet officially reported, but see 192 S. W. 949, Judge Bond, speaking for our Supreme Court says, in effect, that where there is conflict in the evidence, the question as to in whose employ the party is who inflicts the injury complained of, is a question of fact. So it was here.

The petition, as we have seen, distinctly alleges that the injury sustained resulted from the negligent act of the agent and servant of the defendant in throwing the bundle of papers, and at the request of the defendant, now appellant, it was submitted to the jury to determine whether the bundle of papers was thrown by some one in the employ of Bode and under his control. The evidence was conflicting as to whether this boy Sattele, who threw the bundle of papers which caused the hurt to plaintiff below, intestate of the respondent, was in the employ and under the control of Bode, or in the employ and under the control of defendant. Bode, granting although not deciding, that he himself was an independent contractor with the defendant, testified most positively that he had not hired nor engaged nor put this boy Sattele at work, and that he had not paid him for the week's work during the week in which this accident occurred, nor did he exercise any control over him. On the other hand, the testimony for defendant was that it had only paid him for half the week involved, or that is it had paid him $2.50 for that week, and that Bode had paid him $2.00 for what he had done for him for the week. The witness who testified that Bode had paid him, when asked how he knew that, said that this appeared from the payrolls of the defendant company, but the lady who kept these payrolls testified from them that all they showed was the payment for that week by the defendant to the boy of $2.50, and the parts of the payrolls introduced contained no entry whatever of any payment to that boy by Bode, or any payment to Bode on account of that boy for that week.

In a recent and well considered decision by the Supreme Court of California, Claremont Country Club et al. v. Industrial Accident Commission, not yet officially reported, but see 163 Pac. Rep. 209, it is held that it is immaterial who pays an employee, the question is, who controls or directs him, referring to the fact that waiters in restaurants are often not only paid no wages by the proprietor, but actually pay him for the privilege of serving, yet still are employees of the proprietor.

The test is, does the party by whose negligent act the injury was sustained stand in the relation of employer to the one sought to be charged? If he does, the defendant is liable; if not, then he is not liable. [Board of Trade Building Corporation v. Cralle, 109 Va. 246.]

Under the evidence in this case it was for the jury to determine whether Bode had employed this boy, and whether he was under his control, or whether the boy was acting under the control and on the employment of defendant. That he was under the employment and control of defendant before he was placed on this machine on the day of the accident, is clear. Did he change employers and accept the new employment? It is held by our Supreme Court in Flori v. Dolph, supra, that the authorities are clear, "that, to effect such a change of service or substitution of masters in a case like the present, the servant himself must expressly or impliedly consent to accept as his master the person giving him such orders." On the evidence the jury could infer that the bundle boy, Sattele, did not do this. Bode told the manager, representing the defendant in the matter, that as they were putting on an extra machine for that day he needed an extra boy. The manager sent up this boy Sattele, who got on the rear of the machine and evidently knowing what his work was, picked up the marked and labeled bundles and as the machine was driven through the streets threw them out at the designated places. Bode says that he gave the boy no directions to throw them or where to throw them; that the bundles were all marked; that he (Bode) was driving the machine and kept his face to the front and paid no attention to what the boy was doing. In fact it does not appear that Bode ever gave the boy any direction; to the contrary, the bundles appeared to have been done up and marked with their destination in the rooms of defendant, and governed by these marks or labels the bundle boy picked them up and threw or delivered them accordingly, and it does not appear that Bode had anything to do with directing him in this. So that it would

seem that whatever directions this boy received came from the defendant by and through these labels.

Under this state of facts we can come to no other conclusion than that it was a question for the determination of the jury as to whose employ this boy was in at the time, and that issue was submitted to the jury by the instruction asked by the appellant itself and we are concluded by that verdict.

In this view that we take of the case it is unnecessary to follow the learned counsel for the respective parties into their elaborate discussion and compilation of authorities on the question of independent contractors. Here it was a question of fact as to in whose employ the boy who threw the package of papers which did the damage was, when handling these bundles. The evidence was conflicting on that and the jury, by its verdict, necessarily found that he was the employee of the defendant. This disposes of two of the eight points made by counsel for appellant.

It further follows that the contention of counsel as to the error of the court in refusing to instruct a verdict for the defendant at the close of plaintiff's case in chief and again at the close of all the testimony, cannot be entertained.

Throwing a bundle of papers or any solid substance out of a vehicle moving along the public ways in so careless a manner as to hit and injure a person on the street, as was the case here, is actionable negligence and when the jury finds, as here, that the person so acting, was at the time in the employ of the defendant, the defendant is liable in damages for the injury so inflicted. This disposes of the seventh and eighth points, that the demurrers should have been sustained.

The remaining four points go to complain of the instruction on the measure of damages, given at the instance of plaintiff. That instruction need not be set out here. It is suffice to say of it that we think it follows approved instructions often given in like cases. Learned counsel for appellant, in three different places in their printed brief, refer to the case of Powell v. Union Pa-

cific R. R. Co., 255 Mo. 420, l. c. 452 to 459, 164 S. W. 628, as supporting their attack on this instruction. Very clearly and distinctly our Supreme Court has there said that in a civil case a party has the option to ask or not to ask instructions and that the court owes no duty to either party to give instructions either on its own initiative or in lieu of those refused, and that an instruction in general terms, telling the trial jury that if it found for plaintiff it should assess her damages, if any, at such and such sum, if any, as the jury might believe and find from the evidence to be a fair and just pecuniary compensation for damages, if any, occasioned to plaintiff by reason of the accident, not exceeding the sum named in the petition, and where defendant asked no instruction upon the measure of damages and made no attempt at the trial to have the jury restricted from a consideration of certain things, for instance, pain and anguish, or sorrow suffered by plaintiff in consequence of the death, such an instruction is not vulnerable to attack on appeal. We followed this in McDonald v. Central Illinois Construction Co., 183 Mo. App. 415, 166 S. W. 1087, there warning against the danger of asking no instruction on the crucial issues in the case. But we there held, as did the Supreme Court in the Powell Case, that failure to ask or give instructions in a civil case was not, in itself, reversible error. In the light of the decision in the Powell Case and of the many cases there cited, we do not think the giving of this instruction on the measure of damages constituted error.

The judgment of the circuit court is affirmed. *Allen* and *Becker, JJ.,* concur.