[No. B129578. Second Dist., Div. Seven. Oct. 20, 1999.]

JERRY WARE, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, BEL-AIR
COUNTRY CLUB et al., Respondents.

**COUNSEL**

Arden F. Edwards and Donald S. Lucien for Petitioner.

Michael R. Bagby & Associates, Robert T. Movius and Larry D. Preece for Respondent HIH/Great States Insurance Company.

## OPINION

## JOHNSON, J.—

### INTRODUCTION

The Workers' Compensation Appeals Board (WCAB) determined a golf caddie to be an independent contractor rather than an employee when injured. We find that the facts established an employment relationship, considering the goals and purposes of the Workers' Compensation Act (Act), and annul and remand the decision for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

Jerry Ware claimed he sustained various orthopedic injuries on December 27, 1994, and in October of 1996, while employed for Bel-Air Country Club (Club) as a golf caddie. The Club contended Ware was an independent contractor.

At trial Ware testified he had continuous employment with the Club since December of 1993, from 7:00 a.m. to 7:00 p.m. Ware had to wear special clothing and was issued a cap, but had to buy a Club shirt. The Club had rules of conduct, a caddie assignment and locker room, and permission was needed to go to other areas.

According to Ware, his duties consisted of greeting Club members, knowing and advising of the golf course, shagging balls, retrieving, carrying and cleaning clubs, getting carts and changing shoe spikes. Ware received his assignments from the Club but members would instruct him while on the course, which is where he was injured.

Ware further testified he was paid cash pursuant to a voucher given by the Club and paid by the member. The Club established a minimum rate. There were no written contracts or tax forms, and Ware had no other caddie business.

Karen Decker, the Club's office manager, also testified. She stated Ware was not on payroll and was paid cash through the member's account based on signed tickets called chits. Decker added caddies were provided by the Club for its members, but there were no set hours or days and caddies were free to work elsewhere.

Andrew Schaefer, the Club's caddie master, was also a witness. Schaefer indicated he considered ability and personalities in assigning caddies to

members, who also could request certain caddies, but assignments could be refused and caddies could work elsewhere without repercussion. According to Schaefer, a caddie brings the equipment to the putting green and once on the course the member supervises, but the caddie advises and is a guide, services the member, cleans the balls, removes flags, handles clubs and occasionally moves carts.

Schaefer further stated there were no set days or hours, however, caddies normally signed in and advised when leaving. It was Schaefer's job to pay the caddie cash according to chits signed by members which stated suggested fees. The chits, which also specified charges for carts and greens, would then be turned in to accounting to bill the members. Caddies were not fired, only told not to return for violence, drunkenness, lack of ability or attitude.

The parties also submitted points and authorities. Ware pointed out that liberal construction should be applied pursuant to Labor Code section 3202,[1] under section 3357[2] employment is presumed when services are provided, and the Club had the burden of proof to show independent contractor status according to section 5705, subdivision (a).

Ware further contended employment was indicated by the criteria set forth in *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 [256 Cal.Rptr. 543, 769 P.2d 399], where the Supreme Court concluded cucumber crop harvesters more closely resembled laborers, and thus employees, rather than skilled independent contractors, despite the terms of a written contract otherwise. In finding employment, the Supreme Court acknowledged as factors the primary test of right of necessary control over the manner and means used, whether the task is part of the principal's regular business and discharge is terminable at will, does the worker have a distinct business with equipment or employees which is subject to profit or loss, the skill and supervision required, mode of payment, bargaining position of the parties and their intent.

The Supreme Court further instructed that each case depends on the facts, consideration should be given to the purposes of workers' compensation which should be liberally construed under section 3202 to extend benefits, the party seeking to avoid liability has the burden to prove independent

---

[1]Labor Code section 3202 states in relevant part, "This division . . . shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment."

All further reference to statute is to the Labor Code unless stated otherwise.

[2]Section 3357 states, "Any person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee."

contractor status under section 3357 and employment is not limited to common law principles.

Even more on point, Ware cited *Claremont C. Club v. Industrial Acc. Com.* (1917) 174 Cal. 395 [163 P. 209] in which the Supreme Court found injury while caddying was during employment by a golf club. In *Claremont C. Club* the member was assigned and would direct on the golf course the next-in-line caddie, who was paid cash according to the club's ratings and after presenting the caddie master with a signed ticket. The system also involved a caddie house, and the club could in effect discharge by forbidding the caddie from frequenting of the golf course.

The Supreme Court analogized to other employers that provided services to third parties such as maids and houseguests, or waiters and restaurant patrons who also tipped. The Supreme Court found determinative that the caddie could be discharged from the premises when not in the member's service.

In contrast, the Club asserted the facts supported a finding of independent contractor under *S. G. Borello & Sons* and the matter was more like *Manchester Avenue Co. v. Stewart* (1958) 50 Cal.2d 307 [325 P.2d 457] in which the Supreme Court found caddies under a similar system not to be employees of golf courses for purposes of paying Unemployment Insurance Code (UIC) taxes. The Supreme Court also summarized the development of law in this area, including UIC section 651, which states employment does not include services performed while caddying or carrying a player's clubs.

Although some control was exercised by caddie masters or starters over the premises, the Supreme Court found much more significant the exclusive control by players over the caddies on the golf course without interference. The court compared the situation to a union hall where workers are hired out.

In addition, the Supreme court distinguished *Claremont C. Club* since it involved workers' compensation, the caddies were graded and chosen by the golf club for which other work was performed, and payment records were kept. Finally, house servants and waiters could not come and go as they please as could the caddies.

The workers' compensation judge (WCJ) denied employment. In the opinion on decision, the WCJ reasoned Ware was paid solely by members who had direct control on the golf course. In addition, the Club did not set hours, require acceptance of assignments or prohibit work elsewhere.

Ware petitioned for reconsideration which basically duplicated the points and authorities submitted for trial. The Club similarly answered.

In the report and recommendation on reconsideration, the WCJ added the Club had minimal involvement in Ware's work, and distinguished *Claremont C. Club* as a situation where the caddie was not hired and discharged by the member.

Ware filed for review and essentially makes the same arguments, including that he had no separate business and caddying was integral to the Club, no tools were needed although he had to wear Club clothes, simplicity of the work did not require supervision, he took directions from the Club and caddie master and was never informed he was an independent contractor, and the relationship was terminable at will. Ware adds that the Club controlled the manner by which caddying was provided by requiring politeness and knowledgeable services, contrary to the definition of independent contractor under section 3353.[3]

Club answers the facts more closely resemble that of *Manchester Avenue Co.*, which is thus controlling. Club further contends the WCJ's findings were supported by substantial evidence because caddying is a distinct occupation and requires particular skill and knowledge, no tools are required to be provided, Ware was paid by the members, there were no set hours, and caddies were free to work elsewhere.

## DISCUSSION

*Manchester Avenue Co.* is not controlling. As the Supreme Court noted in the opinion, the situation was different from *Claremont C. Club*, which involved a workers' compensation matter.

For purposes of determining independent contractor status in unemployment insurance matters, the common law is more closely followed. (*Empire Star Mines Co. v. Cal. Emp. Com.* (1946) 28 Cal.2d 33 [168 P.2d 686] [most important factor is right of control and employment established if employer has authority to exercise complete control]; *Bemis v. People* (1952) 109 Cal.App.2d 253, 262-263 [240 P.2d 638].) This has been codified in UIC section 621.

However, as the Supreme Court in *S. G. Borello & Sons* made clear, the common law and the Act's purposes in distinguishing between employees and independent contractors are substantially different. Common law

---

[3]Section 3353 states, " 'Independent contractor' means any person who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished."

tests were developed to define an employer's liability for injuries caused by the employee, while the Act broadens employment in order to provide comprehensive and prompt, but limited, coverage in exchange for tort insulation and to increase safety.

The Supreme Court cited as precedent *Laeng v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771 [100 Cal.Rptr. 377, 494 P.2d 1] (tryout for job a service and special risk and part of employment even though not in the contractual sense, considering §§ 3202, 3351 and 5705, subd. (a) and the purposes of the Act) and *Truesdale v. Workers' Comp. Appeals Bd.* (1987) 190 Cal.App.3d 608 [235 Cal.Rptr. 754] (from public policy perspective cosmetologist an employee of beauty shop despite contract terms and instructions from clients).

The trend to view indicia of employment in terms of the Act's purposes is well established. In *Yellow Cab Cooperative, Inc. v. Workers' Comp. Appeals Bd.* (1991) 226 Cal.App.3d 1288 [277 Cal.Rptr. 434] the court found cab drivers to be employees despite a cab leasing agreement, considering the company's pervasive control over such matters as assignments, appearance, behavior, use of car and radio dispatch, shifts, fees and termination. The court at page 1295 explained early cases relied upon the technical contractual or common law conceptions of employment, but recently such employment questions are resolved by reference to the history and fundamental purposes underlying the Act.

Similarly, this court distinguished between common law and workers' compensation in finding that a local minor league baseball player was hired in California which conferred jurisdiction in *Bowen v. Workers' Comp. Appeals Bd.* (1999) 73 Cal.App.4th 15 [86 Cal.Rptr.2d 95], despite contract terms indicating jurisdiction elsewhere.

Therefore, *Claremont C. Club* is more compelling. However, the *S. G. Borello & Sons* analysis is still applicable. In this regard, both sides argue different conclusions even though the essential facts are relatively undisputed. This also renders the issue of employment a question of law and appropriate for this court to decide. (*Truesdale v. Workers' Comp. Appeals Bd., supra,* 190 Cal.App.3d at pp. 613-614.)

For example, both sides indicated the Club and caddie master had absolute authority as to the premises while the member directed on the golf course. However, considering the Act's perspective and section 3202, we do not agree the Club's necessary or retained control did not extend to caddying.

It is undisputed that despite Ware's caddying skills, the Club still supervised dress, behavior, types of services rendered and even the payment

process, notwithstanding that members paid. This is control over the manner and means and not just the result. (§ 3353.)

Indeed, the Club primarily determined assignments based on ability and personalities, kept track of attendance if not hours, and could have ended work on the golf course at any time by denying presence on the premises. As a practical matter, the ability to reject assignments seems of little meaning considering the effect on income and the Club's clearly superior bargaining position.

In regards to the other *S. G. Borello & Sons*'s elements, the scale tips further in favor of finding employment. Since Decker testified caddies were provided by the Club for its members, caddying is an integral part of the Club's business. Thus, Ware provided services which also benefited the Club, and employment is presumed. (§ 3357.)

In addition, Ware did not have his own business and merely allowing caddying elsewhere, or having another job, does not negate a finding of employment. Although some equipment such as golf clubs was supplied by the members, the Club provided a caddie room and lockers.

Considering the totality of circumstances and the intention of the Act, employment was established and not rebutted.

DISPOSITION

The decision is annulled and remanded for further proceedings consistent with this opinion.

Lillie, P. J., concurred.

WOODS, J.—I dissent for the reasons stated by the workers' compensation judge and the Workers' Compensation Appeals Board. The majority does not dispute the factual findings and thus the opinion was supported by substantial evidence and should be sustained. Furthermore, the factual findings are sufficient to establish independent contractor status even under *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341 [256 Cal.Rptr. 543, 769 P.2d 399].

I would also point out that *Manchester Avenue Co. v. Stewart* (1958) 50 Cal.2d 307 [325 P.2d 457] is still precedent because the criteria for employment are consistent with those of *S. G. Borello & Sons*. Finally, *Claremont C.*

*Club v. Industrial Acc. Com.* (1917) 174 Cal. 395 [163 P. 209] involved a much more controlled system since the caddies were strictly chosen and paid according to club rules.