ESSEX COUNTY COUNTRY CLUB, RESPONDENT-PROSE-
CUTOR, v. FRANK CHAPMAN, PETITIONER-DEFEND-
ANT.

Submitted January 27, 1934—Decided July 6, 1934.

Before Justices CASE, BODINE and DONGES.

For the prosecutor, *Edwin Joseph O'Brien*.

For the defendant, *Hannah F. Sokobin* (*Harry J. Goas*, of counsel).

The opinion of the court was delivered by

DONGES, J.  A writ of *certiorari* was allowed to review a judgment of the Essex County Court of Common Pleas which affirmed an award in favor of the defendant herein in the workmen's compensation bureau.

The first point argued is that the bureau was without jurisdiction to make an award because the petition was not filed within one year from the happening of the accident.  However, it appears that the reports required to be filed by chapter 187 of the laws of 1924 were not filed by the prosecutor or its insurance carrier, and, therefore, prosecutor is deprived of the defense sought to be asserted.

It is also urged that the petitioner-defendant was not an employe of the prosecutor at the time of the accident within

the meaning of the Workmen's Compensation act. Petitioner, Frank Chapman, was a caddy who carried clubs for players upon the golf course of the prosecutor, Essex County Country Club. The contention of the prosecutor is that a caddy who is authorized by a club to come upon its golf course to attend players, and who is paid by the game by the players, is not an employe of the club.

It appears by the testimony that an agent of the club, the caddy master, exercised the power of selection of the caddies who were permitted to work on the course; that he issued a badge to each caddy, without which none might be upon the property of prosecutor; that the caddies were paid sometimes in cash by the players and sometimes in a pay check form, which was first approved by the caddy master and then cashed at the club house; that Chapman was an authorized caddy on the course of prosecutor, having been given a badge, and had been such, with some interruptions, for a period of thirty-four years.

According to the briefs of counsel, there is but one case in this state dealing with the question here raised. That case came before the workmen's compensation bureau and the Common Pleas Court, in both of which tribunals it was held that a caddy is an employe of the club. The case did not come to this court.

There is a California case squarely in point. This is *Clairmont Country Club* v. *Industrial Commission,* 163 *Pac. Rep.* 209, where the employment was practically the same as in the instant case, and where, in a well reasoned opinion, the employment was held to be established. In discussing the effect of the payment of compensation by the players instead of by the club, the court said:

"Nor indeed is the method of compensation determinative. Taking the single case of waiters, it is a well-known fact that in some establishments they receive no wage from their employers, and are dependent entirely upon the 'tips' which they receive from the persons they serve, and it is equally a well-known fact that in some instances this system is carried

to such an extent that the waiters themselves pay the employers to obtain the employment. So here it is not of consequence that the member should pay to the caddy directly the amount he has earned, or pay it indirectly through the medium of the caddy master. *The employment and discharge of the caddy during all of the time when he is not actually in the service of a member is wholly under the control of the country club, and this is the determinative fact in the matter.*"

It would appear upon reason that a caddy at a golf club, who is selected by a caddy master and is assigned to the various players by the caddy master, as here, even if paid by the players, is an employe of the club within the meaning of the Compensation act.

The other point necessary to be discussed is whether or not the accident arose out of and in the course of the employment. Chapman had entered the grounds of the club and was on his way to the caddy house where he was to report for work and await assignment to a player. As he was proceeding along a driveway, he was overtaken by an employe of the club in an automobile supplied by the club for the purpose of transporting caddies from the caddy house to the first tee when they were needed to begin a round with a player. He accepted a lift in this automobile and was injured while alighting from it.

We think there can be no doubt but that the accident happened in the course of the employment. As was said in *Terlecki* v. *Strauss,* 85 *N. J. L.* 454; *affirmed,* 86 *Id.* 708.

"It would be entirely too narrow a construction to limit the benefit of the statute to the time the workman is actually employed at his machine. He must have time to reach his machine and to get away from his employer's premises. In fact, it is a necessary implication of the contract of employment that the workman shall come to his work and shall leave with reasonable speed when the work is over. The preparation reasonably necessary for beginning work after the employer's premises are reached, and for leaving when

the work is over, is a part of the employment. A workman is none the less in the course of employment because he is engaged in changing his street clothes for his working clothes."

In that case the employe was combing her hair after stopping actual work, in preparation of leaving the premises. Her hair became caught in some machinery causing the injuries. In discussing the question of whether or not the accident arose out of the employment, Mr. Justice Swayze went on to say:

"The question whether the accident arose out of the employment is perhaps more doubtful. The employment was not indeed the proximate cause of the accident, but it was a cause in the sense that but for the employment the accident would not have happened. The employment was one of the necessary antecedents to the accident. A case has recently arisen, under the English statute, which seems to involve the same principle under different facts. *Gane* v. *Norton Hill Colliery Co.* (1909). 2 *K. B.* 539. A collier was injured while leaving his work and crossing lines of rail controlled by his employers. He had three ways to go home, but the one he used was the shortest and was commonly used by the workmen with the knowledge and consent of the employers. It was held by the Court of Appeal that the accident arose out of and in the course of the employment. * * *."

This case, Terlecki *v.* Strauss, was affirmed unanimously by the Court of Errors and Appeals on the opinion of Mr. Justice Swayze in the Supreme Court, and has been repeatedly cited with approval and followed in this and other jurisdictions.

Another case which warrants attention on this point is that of *Bolos* v. *Trenton Fire Clay and Porcelain Company,* 102 *N. J. L.* 479. The facts there, as set forth in the opinion of Mr. Justice Trenchard, were as follows:

"On May 18th, 1924, the company was using two trucks for the purpose of carting bricks from one place on its

premises to another place on the premises known as the brick shed. These trucks were manned by a driver and a helper on each, and when the noon whistle blew, the truck upon which Bolos was employed was partly filled with bricks at the brick shed and the driver and Bolos left the truck there to go for lunch. Bolos ate his lunch in the barn hard by the garage of the company, and on its premises, as was customary with some of the workmen. The other truck was in the garage during the noon hour. This garage was used for housing the trucks that were not in operation in the yard. After the whistle blew at twelve-thirty to resume work at the termination of the lunch hour, the truck which was in the garage started to go to the brick shed, and Bolos, following the truck out of the garage, jumped on the running-board to ride back to his truck. To reach it at the brick shed, which was about six hundred feet from the garage, the truck traversed in part a public street abutting and paralleling the premises of the company. When the truck turned off the street to go into the yard, Bolos was thrown from the running-board and sustained injuries which resulted in his death."

Now there is a factual situation which seems to be controlled by the identical legal principles which must be applied to the instant case. Bolos was on his way to the particular place on his employer's premises where he was to commence work. He accepted a lift on a truck which was not provided for the purpose of transporting him to that particular place. So Chapman was on his way to the caddy house. He was on the club's property and accepted a life in a car which was in the service of the club for another purpose.

It was held that the death of Bolos occurred by reason of an accident arising in the course of and out of the employment.

"Surely, Bolos may have reasonably jumped on the running-board of the truck to get back to his own car, and such action may have been contemplated by a reasonable person at the time of the employment. This was done during the time in which he was employed, and the accident happened at

a place where he may reasonably have been during that time. To get from the barn to the brick shed, it was necessary, apparently, for him to traverse the street in part. The act of jumping on the running-board of the car was an incident of employment, namely, to get back to the brick shed where his truck was located. If he had been walking back to the brick shed and had been struck by this same truck and injured, surely such an injury would have been incidental to decedent's employment."

And later on, after reviewing the rule laid down in an English case, Mr. Justice Trenchard said:

"Paraphrasing this determination of the court, we may say that Bolos was rightly in the barn; that it was his duty to go from the barn back to the brick shed, and the question is not whether he adopted a way which was not exactly the right one, but whether intending, *bona fide,* to get back to the truck in the brick yard, he was acting in the course of his employment."

So here, we must say that Chapman was rightly on the driveway on the club property; that it was his duty to go to the caddy house, and the question is not whether he should have accepted a lift or should have walked, but whether intending, *bona fide,* to go to the caddy house, he was acting in the course of his employment.

The Bolos case was affirmed by the Court of Errors and Appeals on the opinion delivered by Mr. Justice Trenchard in the Supreme Court (103 *N. J. L.* 483), and under the principles there laid down, the accident in the instant case arose out of and in the course of the employment.

The judgment under review will be affirmed.