### GAMMILL v. MULLINS et ux.

### No. 2516.

Court of Civil Appeals of Texas. Eastland.

June 15, 1945.

Rehearing Denied July 20, 1945.

collision between Mullins' automobile and a truck belonging to Gammill, driven by Gammill's servant or employee, Eugene Arnold. The case was submitted to a jury on special issues, all of which were answered favorably to plaintiffs. Judgment was rendered on the verdict for plaintiffs, and defendant has appealed.

In answer to Issue number 1, the jury found that at the time of the collision Gammill's employee was engaged in the scope of his employment. Special Issue number 19 was: "Do you find from a preponderance of the evidence that at the time of the collision in question, the driver of defendant's truck had, without defendant's knowledge or consent, completely departed from the scope of his employment and in violation of his instructions, deviated from the designated route, which his employment in behalf of defendant required him to pursue, for the accomplishment of an individual purpose, not connected with his employment?" The jury answered said issue "No."

Appellant presents the following points:

"1. The trial court erred in refusing and overruling the defendant's motion for instructed verdict, because the undisputed and uncontradicted evidence showed that the employee of the defendant was not engaged in the course of the defendant's employment, and was not in the furtherance of said employment at the time of the collision in question, but on the other hand at the time of the collision, he had, without the defendant's knowledge or consent, completely departed from the course of his employment, and in violation of his instructions, deviated from the designated route, which his employment in behalf of defendant, required him to pursue, for the accomplishment of an individual purpose, not connected with his employment.

"2. The answer of the jury to Special Issue No. 19 of the Court's charge was contrary to the undisputed and uncontradicted evidence, and was so clearly against the overwhelming weight and preponderance of the credible testimony as manifestly to be wrong.

"3. The answer of the jury to Special Issue No. 1 of the Court's charge was contrary to the undisputed and uncontradicted evidence, and was so clearly against the overwhelming weight and preponderance of the credible testimony as manifestly to be wrong."

Ratliff & Ratliff, of Haskell, for appellant.

Fred Stockdale and Tom Davis, both of Haskell, for appellees.

GRISSOM, Justice.

J. W. Mullins and wife sued H. D. Gammill for damages suffered as the result of a

On the day of the collision Eugene Arnold was the servant of the defendant Gammill and was hired to haul feed from the Gibson farm, about 9½ miles southeast of Gammill's farm, to the Gammill farm and was using Gammill's truck. Mr. Gammill testified, without contradiction, that he instructed Eugene to travel the road running south from Gammill's farm to Midway School; to then turn east about 1½ miles, then south past the Fouts farm and then to go southeast and enter the Gibson farm through a gate on its west side. Gammill testified that this was the best road and the most direct route that could be traveled in hauling the feed. Gammill testified that he instructed Eugene to take another negro on his farm with him if he needed any help, but instead, Eugene got a negro from some other place to assist him in hauling the feed; that he was present when Eugene and his helper returned to Gammill's farm with the first load of feed about noon; that he did not make any objection to the fact that Eugene had obtained as his helper some one other than one of the negroes on the Gammill farm; that when Eugene returned with the first load he traveled the road running north and south by the Gammill farm. There is a different road than the one on which Gammill testified he directed Eugene to travel over which Eugene could have hauled the feed from the Gibson farm to the Gammill farm. This is the Gilliam road which runs north and south parallel with the Midway road, which latter road runs in front of the Gammill farm. A road turns east off of the road running north and south from Gammill's farm, at Midway School, and runs east 2¾ miles where it intersects a road running north and south, known as the Gilliam road. The Gilliam road intersects the road running east and west in front of Midway School. Traveling over the Gilliam road, Eugene could have hauled the feed from the Gibson farm to the Gammill farm, and in doing so he would have traveled over both the north and south ends of the route he was directed by Gammill to travel. From the intersection of the Gilliam road and the road running east and west in front of Midway School, there is a public road to the town of Haskell. The Gibson farm is about 3½ miles northwest of Haskell. Mr. Gammill further testified that after Eugene had returned with the first load of feed, about 11 o'clock in the morning, they stacked the feed and Mr. Gammell and his wife then went to Rochester; that they returned about 5 o'clock in the afternoon; that Eugene and the truck were not there; that no more feed had been hauled; that he then went to the Gibson farm and from there to Haskell; that he noticed bundles of feed along the road between the Gibson farm and the "Yellow Dog"; that he did not find Eugene at the "Yellow Dog"; that he then went from the "Yellow Dog", in Haskell, to the Gilliam road; that on the Gilliam road, a short distance north of where it intersects the road running east and west in front of Midway School, in front of the George Mullins home, he found his wrecked truck, but Eugene was not there. This point was 2¾ miles east of the road running north and south from Gammill's home toward the Gibson farm, on which Gammill had directed Eugene to travel. However, Eugene could have traveled the Gilliam road in hauling the feed to the Gammill farm from the Gibson farm, but by traveling the Gilliam road he would have gone two or three miles further than he would have been required to travel if he had stayed on the route designated by Gammill. Mr. Gammill testified that if Eugene went to Haskell on the day of the collision he did so without his consent. Mr. Gammill further testified that on the day of the collision Eugene was waiting for his call to the army, which he was expecting within five days; that he had not seen Eugene since that day; that he understood he worked for Mr. Brown after the collision; that he had never tried to see or talk to him; that the last time he heard of Eugene he was in California; that he did not have his address or any way to locate him; that there was a load of feed on Gammill's truck on the Gilliam road when he found the truck late on the afternoon of the collision; that Eugene was hauling Gammill's feed on Gammill's truck with a flat bed; that if Eugene had traveled a rough road he naturally would have lost some of the feed.

■■■ Appellant recognizes the general rule that: "While the jury has no right arbitrarily to disregard the positive testimony of unimpeached and uncontradicted witnesses, the mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury. Stated in another form, the rule is that the uncontradicted, uncorroborated testimony of a party to a suit will not authorize or support an instructed verdict." Simmonds v. St. Louis, B. & M. Ry. Co., 127 Tex. 23,

27, 91 S.W.2d 332, 333. However, appellant insists that he was entitled to an instructed verdict, because the evidence is undisputed that at the time of the collision Eugene was not acting within the scope of his employment and in furtherance of the business of Gammill, but was then engaged in a mission of his own wholly disconnected with the affairs of Gammill. He contends further that the testimony of appellant Gammill with reference to said matter is clear and positive and is corroborated and should, therefore, be taken as conclusive. Gammill's testimony on the issue as to whether Eugene was acting in the scope of his employment and in furtherance of Gammill's business, or off on a mission all his own, is not of that clear, positive and unequivocal type that constitutes an exception to the rule requiring that the testimony of a party to a suit shall be submitted to a jury. He did not testify positively that Eugene left his work and went to the Yellow Dog, or to town. His testimony as to the instructions he gave Eugene as to the road to travel is clear and positive enough. But that matter is not controlling and will be discussed later. See McGuire v. City of Dallas, 141 Tex. 170, 180, 170 S.W.2d 722, 723. He depends upon the following as sufficient to corroborate the testimony of the appellant: First, that Mr. and Mrs. J. W. Mullins, the plaintiffs, testified that on the afternoon of the collision they traveled from the west, that is, from Rule, on the highway; that they turned off of the Rule-Haskell highway and traveled north to the Midway Schoolhouse, thence east about two miles to the Gilliam road, and on to where George Mullins lived and where the collision took place; that in traveling said route they did not see anybody following them; that they didn't notice anyone or any vehicle behind them, and didn't know anyone was there until struck from behind by Eugene driving Gammill's truck. This testimony simply shows that the J. W. Mullins traveled over a portion of the route which would have been traveled by Gammill's servant, if the servant had traveled the route designated by Gammill, and that they did not see Eugene on that road. Appellant concludes that these circumstances corroborate Gammill's testimony to the effect that he had "trailed his truck into Haskell and then out to the Gilliam road * * * where he found it wrecked in front of the George Mullins' place * * *." We think these circumstances are insufficient to corroborate Gam-

mill's testimony on the controlling issue, namely, whether Eugene at the time of the accident was engaged in the scope of his employment. We think it does not. It tends to show nothing further than that Gammill's servant, Eugene Arnold, was hauling the feed on the Gilliam road, instead of the Midway road. Of course, Eugene could have been traveling the Gilliam road, after having gone to Haskell, but he could have also been traveling the Gilliam road returning with the feed to the Gammill farm directly from the Gibson farm.

Appellant further contends that Gammill was corroborated in his testimony, indicating that he trailed his truck into Haskell, by the testimony of Buck Thompson, who testified that he saw the Gammill truck twice on the day of the collision; that Eugene was driving it; that he was driving behind Eugene at the time of the collision; that he saw Eugene in the morning hauling a load of feed to the Gammill farm and "I saw him when he was going back."

"Q. You mean back south? A. Yes.

"Q. Was he driving the same truck? A. Yes, sir.

"Q. Did you see him coming back up the same road later on? A. When he was coming to town, when he was hauling feed, I was behind him.

"Q. And he had a load of feed on the truck? A. Yes, sir.

"Q. And he was driving Mr. Gammill's truck, then? A. Yes, sir."

On cross examination he testified:

"Q. Buck, how many times did you say you saw this nigger boy that day? A. Twice.

"Q. Where was he when you saw him? A. Driving a truck.

"Q. Where? A. He taken a load of feed over to Mr. Gammill's and went back.

"Q. Where else did you see him that day? A. I saw him when he had the wreck.

"Q. Did you see him down town that day? A. No, sir.

"Q. Did you see him coming from the direction of town that day? A. No, sir, he wasn't in town at all, I don't think.

"Q. Where were you that day? A. I come to town that evening about one-thirty, then I was going back.

"Q. Did you see this nigger that day at that time? A. In town?

"Q. Yes? A. No, sir.

"Q. At one-thirty did you see him? A. No, sir.

"Q. And you came to town that day? A. Yes, sir.

"Q. What time of day did you go home? A. Oh, it was about four-thirty or five.

"Q. And you saw him that time? A. Yes, sir.

"Q. Now, where was the truck when you saw it about four-thirty or five o'clock that evening, Buck? A. It was coming on the highway about four or four-thirty, on the road, on the dirt road.

"Q. On the dirt road? A. Yes, sir.

"Q. Were you in front of it or behind it? A. Behind it.

"Q. Driving along behind it? A. Yes, sir.

"Q. How far behind it? A. About like here to the jail house."

Appellant stresses the testimony "when he was coming to town * * *." However, the witness immediately corrected this statement to "when he was hauling feed * * *." When all of Buck Thompson's testimony is considered it shows that he did not testify to the effect that Eugene went to town. On the contrary, he testified to the effect that each time he saw Eugene on the day of the accident Eugene was engaged in hauling feed for Mr. Gammill; that he did not see Eugene either going to or coming from town; that "he (Eugene) wasn't in town at all; I don't think"; that Eugene was driving toward Gammill's farm with a load of feed about four-thirty in the afternoon, immediately before the accident, with the witness driving behind Eugene at the time of the accident. Said witness' testimony is not helpful to appellant, except that it shows Eugene was traveling on the Gilliam road, instead of the Midway road, which fact is not in dispute.

The testimony of Mr. Rhodes is also depended upon as corroborating Mr. Gammill on the vital issue. He testified he saw Mr. Gammill at the hospital that night and heard him say he had been out hunting his negro, who failed to come in; that Gammill said, "I come to where he was supposed to be hauling feed and tracked him back to where he had this wreck, until I run onto my truck out by George Mullins," and that he "just hauled one load and never came back with the other load," and that Gammill said he "got uneasy about him and he got out to hunting for him." This testimony does not corroborate Gammill on the controlling issue. In other words, Gammill's testimony tended to show that Eugene quit his work and went off to the "Yellow Dog" and the town of Haskell on a mission of his own. Gammill's testimony, necessarily, was not clear, positive, and unequivocal on that point. He did not know of his own knowledge, that he did so. The most he could do was to detail circumstances, the chief of which was that he saw bundles of feed on the road between the Gibson farm and the town of Haskell, which tended to show that Eugene had quit hauling feed and gone to Haskell for a purpose wholly disconnected from Gammill's affairs. The testimony relied on for corroboration of Gammill does not tend to show that Eugene had gone to town on a mission of his own. It does tend to show that Eugene was traveling on the Gilliam road instead of the Midway road.

The last statement of the rule with reference to the testimony of a party to a suit and its application to the facts of a case by the Supreme Court that we have been able to find is in Texas Emp. Insurance Ass'n v. Roberts, 135 Tex. 123, 130, 139 S.W.2d 80, 84, which is as follows:

"Defendant in error contends that the jury's answer to special issue No. 15 is wholly without evidence to support it and that the trial court correctly disregarded it, because it is shown by uncontradicted evidence that there were no other employees who worked substantially the whole of the immediately preceding year in the same or in a similar employment. The fault in the position thus taken is that the only evidence bearing upon the issue is the testimony of the plaintiff. Simmonds v. St. Louis B. & M. Ry. Co., 127 Tex. 23, 27, 91 S.W.2d 332, 333. On account of that fact the issue should have been submitted to the jury and the trial court was not authorized to disregard the jury's answer. It was within the province of the jury to disregard the plaintiff's testimony. 'As to the testimony of interested witnesses, the general rule is that, while the jury has no right arbitrarily to disregard the positive testimony of unimpeached and uncontradicted witnesses, the mere fact that the witness is interested in the result of the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury. Stated in another form, the rule is that the uncontradicted, uncorroborated testimony of a party to a

suit will not authorize or support an instructed verdict.' Simmonds v. St. Louis B. & M. Ry. Co., supra; Pope v. Beauchamp, 110 Tex. 271, 280, 219 S.W. 447; Sonnentheil v. Christian Meerlein Brewing Company, 172 U.S. 401, 19 S.Ct. 233, 43 L.Ed. 492, 495; Mills v. Mills, Tex.Com. App., 228 S.W. 919; Burleson v. Tinnin, Tex.Civ.App., 100 S.W. 350, application for writ of error refused; Traders & General Insurance Co. v. Milliken, Tex.Civ.App., 87 S.W.2d 503, 505.

"The plaintiff's testimony, the substance of which has been hereinbefore stated, is not so clear, positive and unequivocal upon the point at issue and of such nature and given under such circumstances as to bring it within the exception to the above quoted rule and authorize the trial court to give conclusive effect to it. Great Southern Life Insurance Co. v. Dorough, Tex.Civ.App., 100 S.W.2d 772, 775, 776; Springfield Fire & Marine Insurance Company v. Wm. Cameron & Co., Tex.Civ.App., 96 S.W.2d 788; Simonds v. Stanolind Oil & Gas Co. [134 Tex. 332], 114 S.W.2d 226, 136 S.W. 2d 207, 208; Traders & General Insurance Co. v. Milliken, Tex.Civ.App., 87 S.W.2d 503, 505."

See also Thraves v. Hooser, Tex.Com. App., 44 S.W.2d 916, 921; Texas Cotton Growers Ass'n v. McGuffey, Tex.Civ.App., 131 S.W.2d 771, 774; Hillier v. Howard, Tex.Civ.App., 131 S.W.2d 1002, 1004, writ refused; Bowers v. Bingham, Tex.Civ. App., 159 S.W.2d 576, 578; Sigmond Rothchild Co. v. Moore, Tex.Com.App., 37 S.W. 2d 121, 123; 72 A.L.R. 41; 53 Am.Jur. 297.

As heretofore stated, the real question presented is whether or not the testimony shows conclusively, that is, as a matter of law, that at the time of the collision Gammill's servant was not acting within the scope of his employment and in furtherance of Gammill's business, but, on the contrary, that Gammill's servant was then engaged on a mission of his own. Although Mr. Gammill testified to circumstances from which a jury might have concluded that Eugene, after he had loaded the Gammill truck with feed at the Gibson farm, quit his master's business and went off on a mission of his own to the "Yellow Dog" at Haskell, his testimony was far from conclusive on that point. He said he saw bundles of feed along the road between the Gibson farm and the "Yellow Dog." He did not claim to know that it was his feed. He wholly failed to identify it. No one testified that

Eugene was at the "Yellow Dog" or in Haskell on the day of the accident. There is evidence that there was a load of feed on Gammill's truck at the scene of the accident. There is no evidence that it was not a full load. From the evidence the jury may well have believed that after loading the truck at the Gibson farm for the second time on the day of the collision, that Eugene was returning from Gibson's directly to the Gammill farm with the feed at the time of the collision.

It is true that, according to Mr. Gammill's testimony, Eugene was acting in violation of his instructions in traveling the Gilliam road instead of the Midway road. No witness was available who could testify as to Mr. Gammill's instructions to Eugene, except appellant. Under similar circumstances Judge Norvell, in Lyford Realty Co. v. Clark, Tex.Civ.App., 154 S.W.2d 277, 278, said:

"Practically all of the testimony relied upon to support the allegations of a partnership existing between Craig and Clark was given by Craig. Clark being deceased, this testimony in most of its particulars could not be readily contradicted, even if untrue. Under these circumstances the issue of Craig's creditability was one for the determination of the trier of facts, in this case, the trial court. Thraves v. Hooser, Tex.Com.App., 44 S.W.2d 916, 921, and authorities therein cited."

■ See also McGuire v. City of Dallas, 141 Tex. 170, 181, 170 S.W.2d 722; Simonds v. Stanolind Oil & Gas Co., 134 Tex. 332, 350, 114 S.W.2d 226, 136 S.W.2d 207. However, the fact that Eugene violated Gammill's instructions is not conclusive of the question as to whether Eugene was at the time of the collision acting within the scope of his employment and is not, therefore, determinative of the liability of the appellant. A master may be held responsible for the acts of his servant, even though the servant acts directly contrary to the instructions of the master. The Supreme Court of Texas, in an opinion by Judge Gaines in International & G. N. Ry. Co. v. Anderson, 82 Tex. 516, 520, 17 S.W. 1039, 1040, 27 Am.St.Rep. 902, said:

"To hold the master liable for the act of his servant, it is not necessary that the servant should have authority to do the particular act. The act of the servant may be contrary to his express orders, and yet the master may be liable. But the act must be

done within the scope of the general authority of the servant. It must be done in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed. For the mode in which the servant performs the duty he is engaged to perform, if wrongful, and to the injury of another, the master is liable, although he may have expressly forbidden the particular act."

See also Burnett v. Oechsner, 92 Tex. 588, 50 S.W. 562, 71 Am.St.Rep. 880; Yellow Cab Corp. v. Halford, Tex.Civ.App., 91 S.W.2d 801, 804; Guitar v. Wheeler, Tex. Civ.App., 36 S.W.2d 325, 331.

"The courts are generally agreed that an employer may be held accountable for the wrongful act of his employee committed while acting in his employer's business and within the scope of his employment, although he had no knowledge thereof, or had disapproved it, or even expressly forbidden it. Also, as a general rule, an employer is liable for acts of his employee within the scope of the latter's employment notwithstanding such acts are done in violation of rules, orders, or instructions of the employer." 35 Am.Jur. 993, sec. 559.

See also 80 A.L.R. 727; 68 A.L.R. 1055; 45 A.L.R. 482; 29 Tex.Jur. 415.

We recognize the law announced in the decisions cited by the appellant, and in particular, the decision in Southwest Dairy Products Co., Inc. v. DeFrates, 132 Tex. 556, 125 S.W.2d 282, 283, 122 A.L.R. 854, wherein the Supreme Court said that it was the settled rule "that when a servant completely departs from his work to accomplish some purpose of his own not connected with his employment, the relation of master and servant is thereby temporarily suspended and the master is not liable for his acts during the period of such suspension." And the further holding that when a servant had completely departed from his work and engaged in a mission of his own, that he was "no more engaged in his master's business while returning to, than while departing from his path of duty." The facts conclusively established do not bring this case within the rule there announced. In other words, it is not conclusively shown that Eugene "depart[ed] from his work to accomplish some purpose of his own not connected with his employment." Whether or not he did so was a question of fact. We have given said authorities and the record careful consideration and are forced to the conclusion that it was a question of fact for the jury to determine whether at the time of the collision Gammill's servant was acting within the scope of his employment and in the furtherance of Gammill's business, and that the evidence did not establish the contrary as a matter of law. We are further of the opinion that Issues 1 and 19 were likewise questions of fact for the determination of the jury. The judgment is affirmed.