RIVERBEND COUNTRY CLUB, Appellant,

v.

Chambers A. PATTERSON, Appellee.

No. 4010.

Court of Civil Appeals of Texas.

Eastland.

Nov. 26, 1965.

Rehearing Denied Jan. 28, 1966.

F. Warren Hicks, Houston, for appellant.

H. Cecil Baker, Rosenberg, Helm, Jones & Pletcher, Shirley Helm, Houston, for appellee.

WALTER, Justice.

Chambers A. Patterson recovered a judgment for $17,500.00 against Riverbend Country Club as damages for injuries he sustained when he was struck by a golf cart driven by an alleged employee of the Riverbend Country Club.

The Club has appealed. It contends there was no evidence to support the jury's answers that Hector Andrade was its employee acting in the course of his employment at the time he backed the cart into Mr. Patterson.

■■■ The court gave the following approved definitions:

"An employee is defined as 'every person in the service of another under any contract of hire, express or implied, oral or written, where the employer has the power or right to control and direct the employee in the material details of how the work is to be performed.'"

"By the term 'scope and course of employment' is meant an act done in furtherance of the master's business and for the accomplishment of the object for which the servant was employed."

Hector was a caddy at the Club. The Club did not pay social security tax on the caddies nor withhold taxes from their income. The caddies were not required to report for work at any particular time. They could leave anytime they wanted to and were permitted to return so long as they abided by the rules and regulations. The Club did not pay the caddies for their services to the players, but they were paid directly by the players. According to the rules of the Club, the caddies were not supposed to move the carts.

The caddy master is an employee of the Club. He conducted a caddy school for the boys in order that they might better perform their duties. The caddies were permitted to play golf on the course one day a week when it was closed to the members. This is one of the inducements the Club offers to secure good caddies. When a boy signs the register to caddy, he is under the supervision of the caddy master. The caddy master was asked the following questions and he gave the following answers:

"Q. All right, and the caddy master tells them when to go out, he assigns them, does he not?

A. Yes, sir.

Q. Right, and he tells them those that are entitled to a second bag during the day, and the various things, he controls that work, is that correct?

A. Yes, sir.

Q. And is in charge of the details of their work?

A. Yes, sir."

The rules of the Club require a member to arrange for a caddy through the caddy master except during an official tournament. The caddy fee is fixed by the greens committee. One witness testified that from reading the Club's by-laws and rules, he found nothing which prohibited the caddies from handling the carts. The caddies perform certain services for the Club, such as cleaning up and picking up paper.

The carts belong to the Club and it was the cart attendant's duty to take care of them. When a player completes his play he returns the cart to the Club by either returning it to the ramp or to the cart barn.

Patterson had returned the cart to the edge of the sidewalk near a canopy. It was raining and the players were trying to get out of the rain. The carts are assigned to the players through the pro shop and most of the time are on the ramp in front of the golf shop.

After Patterson had completed his game and was removing his clubs from the cart, a cart owned by the Club and operated by Pee Wee hit him and down he went.

After testifying that Pee Wee was a valued caddy, the golf pro, Smith, testified:

"Q. And still is, and to be valued, a caddy doesn't just sit back when one of the carts is not in the right place, when it should be moved, and all that he goes over there in the best interest of the Club, and the membership and moves the cart on back to the shed?

A. They will do that, they are not authorized, but they will do it."

"Q. Now, with that situation, where he was evidently helping taking these carts back to the shed, or the barn, he was not ordered off of the club grounds after this occurrence?

A. No, sir.

Q. And he continued I think you testified yesterday that he has continued as one of your valued caddies out there up until the present time?

A. Yes, sir."

"Q. Getting back to August 20, 1960, these caddies out there, got ahold of those buggies and took them back whenever there wasn't—and I am saying this they was doing what was the custom out there Jack, and those caddies took those carts back to the barn, there were times when they did?

A. Yes, sir."

"Q. All right, sir, as a matter of fact the custom and I am not trying to put you on the spot up here on this thing, but to throw the light on these things, as a matter of fact, the caddies were encouraged to jump in there and help get those carts back and forth, to facilitate the use of the play and use of the carts and running of the club, and many of them did do that and help the cart men bring the carts back and forth constantly, and that was the custom in

your club prior—I don't know what has happened since this accident, but prior to Chambers Patterson being injured out there, isn't that true, Jack?

A. They did, yes, sir."

The evidence set out above and other facts and circumstances in evidence constitute some evidence of probative force that Pee Wee was an employee of the Club. Claremont Country Club v. Industrial Accident Commission, 174 Cal. 395, 163 P. 209, L.R.A.1918F, 177; Indian Hill Club v. Industrial Commission, 309 Ill. 271, 140 N.E. 871; Essex Country Club v. Chapman, 113 N.J.L. 182, 173 A. 591.

Pee Wee had been working as a caddy at the club for some time and was working at the time of trial. It was conclusively established that at the time of the accident the cart Pee Wee was operating belonged to the club. Under these circumstances a presumption arises that Pee Wee was acting within the course of his employment and in the furtherance of the club's business. Broaddus v. Long, 135 Tex. 353, 138 S.W.2d 1057. The club takes the position in their no evidence points on course of employment that the evidence is so clear, positive, and conclusive that the presumption should be deemed rebutted as a matter of law, however, we have concluded that the testimony did not overcome the presumption as a matter of law and course of employment was a fact issue for the jury. Gammill v. Mullins, Tex.Civ.App., 188 S.W.2d 986 (Writ Ref. N.R.E.).

We have considered all of the evidence and have concluded that the jury's answers that Hector Andrade (Pee Wee) was an employee of the club acting in the course of his employment are not against the great weight and preponderance of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

Appellant objected to the damage issue because there was no evidence or in the alternative insufficient evidence to sup-

port the submission of the issue. Appellant has 19 points of error relating to the damage issue but none of them asserts that the amount is excessive. We consider the testimony of Patterson and his wife to be some evidence of probative force which supports the jury's answer to the damage issue. We have considered all of the evidence and have concluded that the jury's answer to the damage issue is not against the great weight and preponderance of the evidence. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

Appellant's points 26 to and including 31 complain about the admission of evidence. The appellant cites no authority in support of these points and we have found none. They are overruled.

 The last point alleges error on the part of the trial court in commenting on the evidence. While overruling an objection the court said: "The question as to whether or not he is an employee is for the jury." An examination of the statement of facts reveals that no objection was made to this remark and no request was made for the court to instruct the jury not to consider his remark. However, we do not consider such remark as a comment upon the weight of the evidence because the court did not assume any controverted issue or indicate to the jury his opinion on any material question or unduly emphasize the matter. This point is not well taken.

We have considered all of appellant's points and find no merit in them. They are overruled.

The judgment is affirmed.

## ON MOTION FOR REHEARING

Appellant contends in its motion for rehearing that its points twenty-three, twenty-four and twenty-five present points on excessiveness of the verdict. We construed such points as presenting no evidence, insufficient evidence and against the great weight and preponderance of the evidence points.

We have considered such points in the light of appellant's contentions and have concluded that the amount of the award is not excessive. World Oil Company, Inc. v. Hicks, 129 Tex. 297, 103 S.W.2d 962; Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835.

The motion for rehearing is overruled.