

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

August 20, 1996

Mr. James D. Goerke
Executive Director
Advisory Commission
  on State Emergency Communications
333 Guadalupe Street, Suite 2-212
Austin, Texas 78701-3942

Opinion No. DM-409

Re: Whether Health and Safety Code section 777.007 requires the state to indemnify an individual who is not an employee of a regional poison control center and related questions    (RQ-874)

Dear Ms. Boyd:

Section 777.007 of the Health and Safety Code requires the state to indemnify an employee of a regional poison control center under Civil Practice and Remedies Code chapter 104. We understand you to ask primarily whether section 777.007 requires the state to indemnify an individual who is not an employee of a regional poison control center. In our opinion, the plain language of section 777.007 limits indemnity under that section to employees; it does not indemnify individuals who are not employees of a poison control center. Thus, section 777.007 does not require the state to indemnify a volunteer and an independent contractor, nor does it require the state to indemnify an employee of a state agency whose job involves performing some work for a poison control center. Another statute, however, may indemnify an employee of a state agency acting within the scope of his or her official duties.

We believe it will be helpful to begin by discussing Health and Safety Code chapter 777, which designates six health-care facilities as regional poison control centers.[1] Each poison control center must provide a twenty-four hour, toll-free telephone referral service that provides to the public and health-care professionals information on ingested poisons and exposure to poisons.[2] Moreover, a poison control center must attempt to educate the public about poison prevention and health-care professionals about the treatment of poi-

---

[1]Health & Safety Code § 777.001(a). Health and Safety Code section 777.001(a) designates as the six regional poison control centers the University of Texas Medical Branch at Galveston; the Dallas County Hospital District/North Texas Poison Center; The University of Texas Health Science Center at San Antonio; R.E. Thomason General Hospital, El Paso County Hospital District; Northwest Texas Hospital, Amarillo Hospital District; and Scott and White Memorial Hospital, Temple. The Texas Board of Health may designate a seventh regional poison control center in Harris County. *Id.* § 777.001(c).

[2]*Id.* § 777.002(a). Indeed, each regional poison control center must meet the criteria of the American Association of Poison Control Centers, and that association requires a regional poison control center to provide information to health-care professionals and the public 24 hours each day, 365 days per year. *See* American Ass'n of Poison Control Centers, Criteria for Certification as a Regional Poison Center pt. II.A (Jan. 1996).

son and overdose victims, provide toxocologic[3] assistance to state agencies, and be available to consult on medical toxicology.[4] To carry out its functions, a poison control center is required to "use" physicians, pharmacists, nurses, other professionals, and support staff trained in various aspects of toxicology and poison control and prevention.[5]

Section 777.007, about which you specifically ask, requires the state to indemnify "a poison control center and an employee of a poison control center under" Civil Practice and Remedies Code chapter 104.[6] In your letter to this office, you have described various individuals and organizations that are involved with a poison control center: the Advisory Commission on State Emergency Communications and its personnel; the Texas Department of Health and its personnel; personnel of the General Services Commission; the members of the coordinating committee on poison control; health-care professionals who volunteer their time to the poison control center; and specialty consultants who provide, as you state, "sophisticated toxicology or patient care information in their areas of expertise," e.g., herpetology, botany, and forensic toxicology.[7] As we understand your question, you wish to know which, if any, of these persons section 777.007 requires the state to indemnify, to the extent they serve a poison control center.

Aside from volunteer health-care professionals and specialty consultants, the entities you list require some explanation. The first entity, the Advisory Commission on State Emergency Communications, is created by Health and Safety Code chapter 771. Twelve of its sixteen members are appointed by various public officials; the remaining four members sit on the advisory commission because of another public office they hold.[8] With

---

[3]Toxicology is a science that deals with poisons and their effects. WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 1248 (1990).

[4]Health & Safety Code § 777.003.

[5]Id. § 777.004(a). To be certified by the American Association of Poison Control Centers as a regional poison center, a center must have at least one specialist in poison information in the center at all times, sufficient additional staff promptly to handle the center's incoming calls, and the medical director or qualified designee available, at least on-call by telephone, at all times. Criteria for Certification as a Regional Poison Center supra, pt. II.A.

[6]Because you do not ask about a poison control center's corporate liability, we consider only the indemnity to which an employee is entitled.

[7]To be certified by the American Association of Poison Control Centers, a regional poison control center must maintain a list of specialty consultants who are available on an on-call basis. Criteria for Certification as a Regional Poison Center supra, pt. II.C.4. A specialty consultant must be qualified to provide sophisticated toxicology or patient-care information in the consultant's area of expertise. Id. pt. II.E.5. A specialty consultant should be available on-call, as needed. Id. Finally, the areas of expertise reflected by the center's list of consultants should mirror the types of poisonings encountered in the region. Id.

[8]Health & Safety Code § 771.031(a).

reference to the poison control center network, the advisory commission is to administer the centers' telecommunications requirements.[9] The advisory commission funds poison control center services by collecting a surcharge on local exchange and intrastate long-distance telephone charges.[10]

The Texas Department of Health is established generally to protect and promote public health.[11] The department is governed by a six-member board, each member of which is appointed by the governor.[12] With respect to the regional poison control centers, the Department of Health shares rule-making authority with the Advisory Commission on State Emergency Communications;[13] it also shares with the advisory commission responsibility to award grants to fund the regional poison control centers.[14]

The General Services Commission, whose six members are gubernatorial appointments,[15] is generally responsible for procuring all of a state agency's goods and services.[16] Significant to your question, the General Services Commission must manage the operation of a telecommunications system for all state agencies.[17] The General Services Commission also must, to the extent possible, satisfy each state agency's telecommunications needs.[18] For purposes of the State Purchasing and General Services Act,[19] a "state agency" includes an agency in the executive branch of state government created by a state statute.[20] The Advisory Commission on State Emergency Communications, which administers the poison control centers' telecommunications needs, qualifies as a state agency under the State Purchasing and General Services Act.

---

[9]*Id.* § 771.051(a)(1).

[10]*Id.* §§ 771.071(a), .072(a), (d), (e), .075.

[11]*Id.* § 11.002.

[12]*Id.* § 11.005(a). The board employs a commissioner to administer the department, but the commissioner is always subject to the board's supervision. *Id.* §§ 11.012(a), .013(a), (b).

[13]*Id.* § 777.001(b).

[14]*Id.* § 777.009.

[15]Gov't Code § 2152.051.

[16]*Id.* § 2155.061(a).

[17]*Id.* § 2170.051(a).

[18]*Id.* § 2170.051(b).

[19]Gov't Code tit. 10, subtit. D; *see id.* § 2151.001.

[20]*Id.* § 2151.002(2)(A).

The coordinating committee on poison control, the last entity you specifically mention, advises the Texas Board of Health and the Advisory Commission on State Emergency Communications.[21] Six of the committee's members are appointed by each of the health-care institutions that serve as regional poison control centers; the remaining nine members are appointed by other public health-care institutions and state agencies, including the Advisory Commission on State Emergency Communications and the Department of Health.

To resolve whether these entities, as well as volunteers and specialty consultants, are entitled to indemnity under Health and Safety Code section 777.007, we must interpret the section. On its face, section 777.007 requires the state to indemnify only an employee of the center under Civil Practice and Remedies Code chapter 104. Consequently, anyone who is not employed by a poison control center is not entitled to indemnity under section 777.007.

Chapter 777 of the Health and Safety Code does not, however, define the term "employee." Incidentally, when the legislature enacted Health and Safety Code section 777.007 in 1993,[22] chapter 104 of the Civil Practice and Remedies Code also did not define the term.[23] We must, therefore, define the term in context and consistent with common usage.[24] In Attorney General Opinion JM-525 this office defined the term "employee" for purposes of Civil Practice and Remedies Code chapter 104 in light of the statute's purpose to indemnify an employee of the state.[25] Because chapter 104 generally renders the state liable for damages caused by an employee's conduct, the opinion exam-

---

[21]Health & Safety Code § 777.008(a).

[22]See Act of May 27, 1993, 73d Leg., R.S., ch. 670, sec. 1, § 777.007, 1993 Tex. Gen. Laws 2495, 2497.

[23]Prior to 1995, Civil Practice and Remedies Code chapter 104 indemnified, among others, an employee or officer of a state agency. See Civ. Prac. & Rem. Code § 104.001(1), amended by Act of May 9, 1995, 74th Leg., R.S., ch. 139, § 2, 1995 Tex. Sess. Law Serv. 982, 982. The Seventy-fourth Legislature amended section 104.001 to indemnify the same people but regardless of whether they performed their services for compensation. See Act of May 9, 1995, 74th Leg., R.S., ch. 139, § 2, 1995 Tex. Sess. Law Serv. 982, 982. To the extent that the 1995 amendment defines the term "employee" to include a volunteer, we cannot import the definition into Health and Safety Code section 777.007; we may import a statutory definition only into a later-enacted statute. See Brookshire v. Houston Indep. Sch. Dist., 508 S.W.2d 675, 677-78 (Tex. Civ. App.--Houston [14th Dist.] 1974, no writ) (citing Brown v. Darden, 50 S.W.2d 261 (Tex. 1932)). Because the "definition" cannot be imported, for purposes of this opinion we discuss Civil Practice and Remedies Code chapter 104 as though the 1995 amendment to section 104.001 had not occurred. Of course, if an individual performing services for a regional poison control center is doing so as a volunteer for a state agency to which Civil Practices and Remedies Code chapter 104 applies, the individual is indemnified under chapter 104.

[24]See Attorney General Opinion JM-525 (1986) at 4 (citing Gov't Code § 311.011).

[25]Id.

ined analogous private-sector tort cases in which an employer's liability depends on the tortfeasor's being an employee, not an independent contractor.[26] In these cases, an individual's status as an employee depends upon whether the employer has the right to control the details of the work.[27] Whether the employer actually exercises the right is inconsequential.[28]

In our opinion, because the context of Health and Safety Code section 777.007 is similar to that of Civil Practice and Remedies Code chapter 104, we may define "employee" in the same way. The definition articulated by Attorney General Opinion JM-525 is designed to distinguish an employee from an independent contractor, however; it does not necessarily distinguish an employee from a volunteer. Nevertheless, a federal court in Maryland has noted that the nature of a volunteer's service is such that an "employer" has little control over the volunteer.[29] For instance, although an employer may instruct a volunteer as to the services the employer wishes the volunteer to perform, the employer has little control over the volunteer's hours of work, dress, absenteeism, or whether the volunteer satisfactorily completes the assigned tasks.[30]

Furthermore, we believe an express or implied contract for compensation is an additional characteristic of the employee-employer relationship that distinguishes an employee from a volunteer. Section 101.001 of the Civil Practice and Remedies Code defines "employee" for purposes of the Texas Tort Claims Act[31] as "a person . . . who is in the paid service of a governmental unit . . . ."[32] A volunteer is not an employee for whose conduct a governmental unit may be liable under the Tort Claims Act.[33] Because the pur-

---

[26]*Id.*

[27]*Id.* (citing *Newspapers Inc. v. Love*, 380 S.W.2d 582, 591 (Tex. 1964)).

[28]*Id.* (citing *Great Western Drilling Co. v. Simmons*, 302 S.W.2d 400, 403 (Tex. 1957)).

[29]*See Haavistola v. Community Fire Co.*, 812 F. Supp. 1379, 1386 (D.C. Md.), *rev'd on other grounds*, 6 F.3d 211 (4th Cir. 1993).

[30]*See Id.*

[31]Civ. Prac. & Rem. Code ch. 101; *see id.* § 101.002.

[32]In Attorney General Opinion DM-346 this office stated that commissioners of the Texas Workers' Compensation Commission are in the paid service of a governmental entity and therefore "employees" for purposes of Civil Practice and Remedies Code chapter 101 because they are "entitled to reimbursement for actual necessary expenses and actual lost wages due to attendance at commission meetings." Attorney General Opinion DM-346 (1995) at 1 n.1. Although a volunteer for a regional poison control center may receive reimbursement for his or her expenses, we find no statute entitling a volunteer to reimbursement. *Cf.* Gov't Code § 2109.004(b)(1) (authorizing governmental entity that provides human services to reimburse volunteers for actual and necessary expenses). In addition, a volunteer is not compensated in any way for lost wages due to the volunteer work.

[33]*See Harris County v. Dillard*, 883 S.W.2d 166, 167 (Tex. 1994).

poses of the Tort Claims Act and section 777.007 of the Health and Safety Code pertain to the state's liability in tort cases, we believe we must construe the term "employee" consistently in both statutes, especially since the legislature has not provided to the contrary.

In addition, for purposes of the Workers' Compensation Act, the Texas Court of Civil Appeals has held that an individual who performs a service of his or her own free will without any promise of remuneration is a volunteer, not an employee.[34] While the court based its conclusion on the definition of the term "employee" in the Workers' Compensation Act, we believe the court's definition comports with the common understanding of the term. For example, *Black's Law Dictionary* defines employee generally as "a person in the service of another under [a] contract of hire[35] .... a person working for salary or wages."[36] A volunteer, by contrast, is an individual who serves with no promise of remuneration.[37]

We therefore conclude that, unless defined otherwise by statute, an individual's status as an employee is determined not only by whether the putative employer has a right to control the employee, but also by whether the putative employer has contracted, explicitly or implicitly, to compensate the employee for the employee's services. We note that Civil Practices and Remedies Code section 102.001(1) explicitly defines "employee" for purposes of determining a local government's tort-claim liability to include a volunteer. We think, though, that this inclusion of volunteer is an exception to the general rule. Moreover, we believe the definition of employee in the Texas Tort Claims Act[38] more closely fits the legislature's intended usage of the term in Health and Safety Code section 777.007, given that both statutes involve the state's liability for its employees' conduct.

Consequently, in answer to your specific questions, Health and Safety Code section 777.007 requires the state to indemnify only those individuals with whom a poison control center contracts, explicitly or implicitly, to compensate and whose services the poison control center has a right to control. Both of these requirements must be met. An

---

[34]*See Texas Employers Ins. Ass'n v. Burrell*, 564 S.W.2d 133, 134 (Tex. Civ. App.--Beaumont 1978, writ ref'd n.r.e.) (citing *Nobles v. Texas Indem. Ins. Co.*, 24 S.W.2d 367, 369 (Tex. Comm'n App. 1930, judgm't adopted) and other cases).

[35]*Black's* cites, for this definition of "employee," *Riverbend Country Club v. Patterson*, 399 S.W.2d 382, 383 (Tex. Civ. App.--Eastland 1965, writ ref'd n.r.e.). BLACK'S LAW DICTIONARY 471 (5th ed. 1979).

[36]*Id.* (footnote added); *see also Graves v. Women's Professional Rodeo Ass'n*, 907 F.2d 71, 73 (8th Cir. 1990) (stating that essential prerequisite of employer-employee relationship is that employer compensates employee).

[37]BLACK'S LAW DICTIONARY at 1413.

[38]*See supra* text accompanying notes 31-32.

individual employed by a state agency who, in accordance with statutory duties bestowed upon that agency, works with a regional poison control center is not an employee of the center, although the individual is an employee of the state agency. A volunteer who serves a regional poison control center is not an employee of the center because the volunteer has no expectation of remuneration for his or her services. Likewise, an individual who is contractually entitled to payment from a poison control center, but who is not subject to the center's right to control the details of the work, is an independent contractor, not an employee of the center.

Accordingly, section 777.007 does not require the state to indemnify many of the individuals you list. The state need not indemnify under that section individuals who serve a regional poison control center because they are employed by a state agency that has some responsibility with respect to the center. Thus, officers and employees of the Advisory Commission on State Emergency Communications, the Texas Department of Health, the General Services Commission, or the coordinating committee are not employees of a regional poison control center, and section 777.007 does not require the state to indemnify them.

Other statutes may provide these individuals with indemnity or exempt them from liability, however. Health and Safety Code section 771.053(b), for example, may exempt from liability members of the Advisory Commission on State Emergency Communications. Furthermore, chapter 104 of the Civil Practice and Remedies Code requires the state to indemnify an employee or officer of a state agency.[39] Although chapter 104 does not define state agency, we believe the term includes entities created by statute, that have statewide jurisdiction, and the members of which are appointed by state officials.[40] Accordingly, we conclude that employees and officers of the Advisory Commission on State Emergency Communications (to the extent they are not exempt from liability), the Texas Department of Health, and the General Services Commission are within the indemnity Civil Practice and Remedies Code chapter 104 provides. Of course, chapter 104 requires the state to indemnify an employee or officer only if the damages are predicated on the employee's or officer's act or omission performed in the course and scope of the employment or office.[41] Additionally, chapter 104 requires the state to indemnify an employee or officer only if the damages arise out of a cause of action for negligence; the damages arise out of a cause of action for deprivation of a federal constitutional or statutory right, privilege or immunity; or the attorney general determines that the state's best interest warrants indemnifying the employee or officer.[42]

---

[39]Civ. Prac. & Rem. Code § 104.001(1).

[40]See Attorney General Opinion JM-1005 (1989) at 4 (citing Attorney General Opinion H-297 (1974)) (defining "state agency").

[41]Civ. Prac. & Rem. Code § 104.002(a).

[42]Health & Safety Code § 777.007.

Section 777.007 of the Health and Safety Code does not require the state to indemnify a volunteer of a regional poison control center.[43] We cannot determine whether section 777.007 requires the state to indemnify a specialty consultant because you do not indicate the circumstances of a specialty consultant's service to a regional poison control center. If the specialty consultant is an employee of a regional poison control center, he or she is entitled to indemnity under section 777.007. If, on the other hand, the specialty consultant is not a poison control center employee, he or she is not entitled to indemnification under section 777.007, although the consultant may be entitled to indemnification, under another statute, as an employee of another agency.

---

[43]Government Code chapter 2109 requires a governmental entity that provides for basic human mental or physical needs to use volunteers, if feasible. Gov't Code § 2109.002; *see also id.* § 2109.001 (defining "governmental entity," "human services"). A governmental entity's volunteer program may, among other things, "establish an insurance program to protect volunteers in the performance of volunteer services." *Id.* § 2109.004(b)(2). You do not ask, and we do not, therefore, determine whether a regional poison control center is a governmental entity that provides human services, to which Government Code chapter 2109 is applicable. We also do not consider whether the insurance program chapter 2109 authorizes a governmental entity to establish includes liability insurance.

# S U M M A R Y

Health and Safety Code section 777.007 requires the state to indemnify only an employee of a regional poison control center. An individual's status as an employee is determined by whether the putative employer has a right to control the details of the individual's work. In addition, an employee is distinguished from a volunteer by an employee's contractual (express or implied) right to compensation.

An employee of a state agency, not a regional poison control center, is not entitled to indemnification under Health and Safety Code section 777.007. Thus, an officer or employee of the Advisory Commission on State Emergency Communications, the Texas Department of Health, the General Services Commission, or the coordinating committee established by Health and Safety Code section 777.008 who are not employees of a regional poison control center are not entitled to indemnification under section 777.007. Of course, other statutes may provide these individuals with indemnity or exempt them from liability. Furthermore, section 777.007 does not require the state to indemnify volunteers or independent contractors of a regional poison control center.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General